Martin M. CASSITY, Sr., Administrator with Will Annexed of the Estate of Roy M. Johnson, Deceased, Appellant,

v.

Paul E. PITTS, Bonnie Kendall, Ruth S. Brown, William Wiist, and Thomas Dunlap, Co-trustees of the Oil and Gas Trust and Residuary Trust Created Under the Otey G. Johnson Revocable Living Trust of Otey G. Johnson, deceased, Appellees.

No. 72168.

Supreme Court of Oklahoma.

Oct. 13, 1992.

Delmer L. Stagner, Stagner & Blevins Associates, Oklahoma City, and Alan E. Synar, Synar & Bullard, Edmond, for appellant.

Wesley C. Freudenburg, Cynda C. Ottaway, Todd Taylor, Crowe & Dunlevy, Oklahoma City, for appellees.

WATT, Justice.

Martin Cassity, Sr. is the Administrator of the Estate of Roy M. Johnson, deceased. This suit arose from Cassity's claim that Otey G. Johnson forged Roy M. Johnson's signature to a purported living trust in 1960. Roy M. Johnson was Otey Johnson's father. Cassity, as personal representative of the Roy M. Johnson estate, sought to recover the property that Roy M. Johnson, purportedly conveyed under the 1960 living trust. Appellees, defendants below, are the trustees of trusts that comprise Otey Johnson's entire estate.

### FACTS

The 1960 trust named as trustees, Otey Johnson, and the First National Bank and Trust Company of Oklahoma City. The 1960 trust instrument also named another individual, T.H. Thomason, as a trustee. Thomason, however, did not sign the trust

and apparently never served. Roy M. Johnson died July 30, 1960, twelve days after the date shown on the 1960 trust. Roy M. Johnson's son, Otey Johnson, lived another twelve years. Cassity claimed that Otey Johnson concealed the existence of the trust from the trust's other beneficiaries.

Cassity is the surviving husband of June J. Cassity, deceased. Mrs. Cassity was Otey Johnson's sister and the Administrator of the Roy M. Johnson estate. Following Mrs. Cassity's death in 1987, Cassity replaced her as Administrator. In the Spring of 1985, Administrator's counsel, and one of Administrator's sons, obtained a copy of the signature page from the 1960 trust from the records of the Carter County Clerk. In May 1985 counsel for Administrator discovered among Otey Johnson's papers a medical journal in which was written many times the name Roy M. Johnson. Otey Johnson was a doctor. The medical journal was dated two months before the date Roy M. Johnson died. Administrator's counsel, in his deposition, conceded this information made him suspect that someone had forged Roy M. Johnson's signature on the 1960 trust. In November 1985, handwriting experts told counsel for the Administrator that Roy M. Johnson's signature had been forged to the 1960 trust. Not until August 1987, however, did these handwriting experts say that Otey Johnson had forged Roy M. Johnson's signature to the 1960 trust.

All parties to this action, and others, made a comprehensive settlement agreement dated December 16, 1985. The Administrator of the Roy M. Johnson Estate,

> ... release[d] forever any and all claims of whatsoever nature (including, but not limited to, any claims by the individuals as heirs-at-law of Otey G. Johnson, deceased), against [the Trustees who are parties to this action, and others].

Appellees hold all of the property from the estate of Otey Johnson as Trustees.

## PROCEDURAL HISTORY

Cassity brought this action November 4, 1987. Following extensive discovery, Trustees moved for summary judgment. Trustees claimed (1) the applicable two year statute of limitations barred Cassity's action, and (2) the 1985 settlement agreement barred Cassity's claim. The trial court granted Trustees' motion for summary judgment on the ground that the 1985 release barred Cassity's action. Cassity appealed.

The Court of Appeals affirmed the trial court. It held that the two year statute of limitations barred Cassity's action. The Court of Appeals ruled that the statute on Cassity's cause of action started to run on the date the trust instrument was filed for record with the County Clerk. That date, indisputably, was not later than Spring 1985. Cassity did not file suit until November 1987, so the Court of Appeals ruled that the statute of limitations barred his cause of action. Because of its ruling on the statute of limitations issue, the Court of Appeals declined to address the effect of the 1985 release on Cassity's action. Cassity sought certiorari.

Because of our analysis of the effect of the 1985 release, we do not reach the issue of when the statute of limitations started to run.

## ISSUE

■ Did the 1985 settlement agreement serve to release Cassity's cause of action? We answer yes. We vacate the opinion of the court of appeals but, nevertheless, affirm the judgment of the trial court for the reasons stated in this opinion.

## DISCUSSION

To decide whether the settlement agreement bound Cassity we must analyze what the Administrator and her counsel knew when the settlement agreement was executed in December 1985. Also, we must analyze the language of the agreement.

Administrator's counsel admitted in his deposition that Otey Johnson was already suspected of having forged the 1960 trust, at the time the parties signed the settlement agreement. Counsel had received a letter from a handwriting expert prior to the date of the settlement agreement. In her letter to counsel, the handwriting expert said that the signature on the trust

was not written by the same person who signed Roy M. Johnson's name on documents furnished to her as exemplars of his signature. Counsel discussed with the other parties the possibility that the 1960 trust had been forged before the settlement agreement was signed.

We agree with the trial court's conclusion that the settlement agreement released Trustees from liability for the claim Cassity asserts here. Counsel's lack of an expert opinion that Otey Johnson was the forger does not change the result. The releasing language in the settlement agreement "release[d] forever any and all claims of whatsoever nature ..." We have held that such broad language

> ... clearly contemplates some possible liability or *possible future claim* in addition to that under discussion by the parties at the time the release was executed. We think the language in the release was broad enough to cover all demands or rights to demand, or possible causes of action, and constituted a complete discharge of liability, whether or not the various demands or claims were discussed or mentioned when the mutual release was signed, and *whether or not the possible future claims were known.* [Citation omitted.] [Emphasis supplied.]

*Kay Pharmacal Co. v. Dalious Const. Co.,* 276 P.2d 756, 758 (Okla.1954). Cassity candidly admits that Mrs. Cassity and her counsel suspected Otey Johnson before they signed the settlement agreement. This ends the inquiry. While Cassity's cause of action did not arise before the Administrator had tangible evidence that Otey Johnson was the forger, Cassity is still bound by the release because Mrs. Cassity, then the Administrator, and her counsel *suspected* Otey Johnson. This information was sufficient to show Administrator's knowledge "... of possible future claims ...," against Trustees. *Kay Pharmacal Co. v. Dalious Const. Co.,* Id.

Those representing the Roy M. Johnson Estate in 1985 could easily have said in the settlement agreement that any claim arising from the fraud of Otey Johnson was reserved and not covered by the release. They did not do so. The Estate is bound by the unqualified, unambiguous, language of release in the settlement agreement. *Kay Pharmacal Co. v. Dalious Const. Co.,* Id.

■ Finally, Cassity claims he is entitled to reformation of the settlement agreement because, among other reasons, the Roy M. Johnson Estate received only $100.00 for the 1985 release. We disagree. We rejected a similar contention in *Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 181 (Okla.1988):

> Silk argues alternatively that the consideration for the option is inadequate. *Even gross inadequacy of consideration, standing alone, is not enough ground upon which to cancel a contract or to base rescission.* [Citation omitted.] [Emphasis added.]

We see nothing in the record before us to support Cassity's claim for reformation or rescission of the settlement agreement.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; DISTRICT COURT'S ORDER GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AFFIRMED.

All Justices concur.