**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 3 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEANNE KENNEDY,

      Plaintiff-Appellant and Cross-
Appellee,

v.

FORD MOTOR COMPANY,

      Defendant-Appellee and Cross-
Appellant.

Nos. 02-7009 & 02-7069
(E.D. Oklahoma)
(D. Ct. No. 92-CV-395-S)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

In this diversity case, Jeanne Kennedy appeals a district court order

granting summary judgment in favor of defendant Ford Motor Company ("Ford").

Ford cross-appeals a district court order denying its motion for attorney's fees.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and Federal Rule of Civil

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Procedure 54(b), we affirm the district court's orders granting summary judgment and denying attorney's fees.

**Background**

Ms. Kennedy's injuries occurred when the Ford Bronco II she was driving rolled over. Based on diversity jurisdiction, she filed suit against Ford in the United States District Court for the Eastern District of Oklahoma, alleging defects in the vehicle caused the accident. Ms. Kennedy and Ford settled the claim without going to trial. Under the terms of the settlement agreement, Ms. Kennedy released her claims against Ford in exchange for $270,000.

Several years later, Ms. Kennedy learned of a "memo" which, according to her, indicates Ford's attorneys paid an expert witness, David Bickerstaff, to alter his testimony about the Bronco II's safety in Ford's favor. She believes the memo proves Ford "purchased perjured testimony of a crucial fact witness ... to fraudulently induce a low settlement" in this and other Bronco II rollover suits. Based on this allegation, Ms. Kennedy filed a Second Amended Complaint to her original suit, alleging Ford "illegally concealed" evidence "that contained purchased perjured testimony of a crucial fact witness." Ford filed a counterclaim for attorney's fees, arguing Ms. Kennedy breached the release and agreed to

indemnify Ford against future claims. Ford requested, in part, recovery of its actual damages and attorney fees and costs.

The district court granted Ford's motion for summary judgment on grounds the release Ms. Kennedy signed barred her claims. The court held "the fraud claims brought in the instant case are clearly covered by the release in question because they arise out of the product liability claim." The order granting summary judgment did not address Ford's counterclaim for attorney's fees. Based on the favorable summary judgment order, Ford filed a motion for attorney's fees. The district court entered a minute order "denying defendant's motion for attorney fees" but never explicitly ruled on Ford's pending counterclaim. Pursuant to Fed. R. Civ. P. 54(b), the district court certified as final judgment its order granting summary judgment in favor of Ford. The district court stayed "all proceedings as to the counterclaim" pending this appeal.

Ms. Kennedy now appeals the district court's order granting summary judgment. She argues she "did not and could not release the claims relating to the concealing of evidence and the bribing of a witness of which she was unaware, and which are now before this Court." Ford cross-appeals the district court's order denying its motion for attorney's fees. We address these arguments below.

**Summary Judgment**

Ms. Kennedy believes the district court erred in holding the release she signed bars her current claim. The district court held the release bars her claim because it arose from her original product liability suit. Ms. Kennedy believes Ford fraudulently induced the release. She also argues it applies only to "injuries and damages ... as a result of the ... vehicle accident." According to Ms. Kennedy, "this fraudulent scheme [is] different sequentially and conceptually from the underlying product liability claims." She believes the release's language limits it to claims based on "the consequences of a product (Ford Bronco II) and an accident, not the fraudulent scheme to cheat litigants."

Because this is a diversity action, we apply Oklahoma's substantive law, with the objective of reaching the same result as would be reached by an Oklahoma court. *See Brodie v. General Chem. Corp.*, 112 F.3d 440, 442 (10th Cir. 1997). However, we apply federal law to determine whether the district court properly granted summary judgment. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, we review the decision de novo, applying the same standard as the district court. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir.), *cert denied*, 528 U.S. 815 (1999). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Oklahoma law, to determine whether a release bars future fraud claims, we must consider (1) what the complaining party and her counsel knew at the time she signed the release, and (2) the language of the release. *See Cassity v. Pitts*, 839 P.2d 192, 194 (Okla. 1992). In conducting the first portion of the analysis, we must consider whether Ms. Kennedy and her counsel had "information ... sufficient to show ... knowledge of possible future claims" against Ford. *Id.* at 195 (quotation marks and citation omitted.). The Oklahoma Supreme Court has held, where a party suspected the other party engaged in fraud but had no tangible evidence of the fraud, the suspicion shows knowledge of possible future claims. *Id.*

When Ms. Kennedy signed the release, she and her attorney knew Mr. Bickerstaff changed his testimony in Ford's favor. Her attorney also knew Ford paid the witness, and believed the payment induced the change in testimony. Thus, it is abundantly clear Ms. Kennedy and her attorney suspected Ford engaged in fraud.

Ms. Kennedy attempts to sidestep this fact by emphasizing she did not *know*

Ford (allegedly) paid the witness to alter his testimony until she obtained the inculpatory memo. The Oklahoma Supreme Court has flatly rejected the argument a litigant must possess tangible evidence of the suspected fraud. *Id.* Ms. Kennedy's and her counsel's suspicion Ford paid Mr. Bickerstaff to alter his testimony sufficiently shows her knowledge of possible future claims.

Continuing to the second part of the analysis, we must determine whether the language "'clearly contemplates some possible liability or possible future claim in addition to that under discussion by the parties at the time the release was executed.'" *Id.* (quoting *Kay Pharmacal Co. v. Dalious Constr. Co.,* 276 P.2d 756, 758 (Okla. 1954)) (emphasis omitted). A release bars future fraud claims if its language is "broad enough to cover all demands or rights to demand, or possible causes of action, and constituted a complete discharge of liability, whether or not the various demands or claims were discussed or mentioned when the mutual release was signed, and *whether or not the possible future claims were known.*" *Id.* (quoting *Kay,* 276 P.2d at 758) (emphasis in original).

Under the terms of the release before us, Ms. Kennedy:

remise[d], release[d] and forever discharge[d] ... Ford Motor Company ... from any and all actions, suits, causes of action, debts, sums of money, claims or demands, whatsoever, either in law or in equity, whether liquidated or unliquidated, either now existing or

which may hereafter arise or be ascertained which the undersigned, or [her successors in interest], ever had, now has or may hereafter have, by reason of an accident involving a 1984 Ford Bronco II vehicle ... including, but not limited to, any and all claims asserted, or which might have been asserted, whether in law or in equity, in that certain Case No. CIV-92-395-S.

The release clearly contemplates future claims (*i.e.*, "either now existing or which may hereafter arise or be ascertained"; "now has or may hereafter have"). It likewise covers a wide, if not exhaustive, spectrum of claim types (*i.e.*, "any and all actions, suits, causes of action, debts, sums of money, claims or demands, whatsoever"). It is not limited to then-existing or then-known claims (*i.e.*, "claims ... either now existing or which may hereafter arise *or be ascertained*" (emphasis added)). We therefore agree with the district court; the release language is broad enough to bar Ms. Kennedy's current claim.

We are unpersuaded by Ms. Kennedy's argument the release applies only to claims arising out of the Bronco II accident itself. As previously recounted, the release expressly refers to claims "either now existing or which may hereafter arise or be ascertained" and "any and all claims ... which might have been asserted ... in that certain Case No. CIV-92-395-S." This language suggests the parties intended to bar all future claims pertaining in any way to the products liability suit. Further, had this not been Ms. Kennedy's intent, she could have

explicitly reserved from the release any claims for fraud relating to Mr. Bickerstaff's testimony. *See id.* (noting the plaintiff "could easily have said in the settlement agreement that any claim arising from the fraud ... was reserved and not covered by the release.").

We also reject Ms. Kennedy's claim the Oklahoma Court of Appeals decision in *Evans v. Bridgestone-Firestone, Inc.*, 904 P.2d 156 (Okla. Ct. App. 1995), permits her claims to survive the release. In *Evans*, the intermediate court allowed a plaintiff to avoid a release where evidence suggested the defendant affirmatively misrepresented it installed a rebuilt engine in the plaintiff's car. *Id.* at 158. *Evans* is not helpful to Ms. Kennedy because, in that case: (1) the fraud went to the consideration that induced the release, and (2) nothing indicated the plaintiff suspected the fraud at the time she executed the release. *Id.* at 158-59. Here, Ford delivered the consideration ($270,000) that induced Ms. Kennedy to sign the release. As already discussed, Ms. Kennedy and her lawyer suspected the alleged fraud when she signed the release.[1]

---

[1] Even if we were to read the Oklahoma Court of Appeals decision in *Evans* to conflict with the Oklahoma Supreme Court decisions in *Cassidy* and *Kay*, "we must apply the most recent statement of state law by the state's *highest court*." *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994) (emphasis added).

Finally, we decline Ms. Kennedy's invitation to consider cases from other state and federal jurisdictions, and whether the district court's order is undesirable as a matter of policy. Because the Oklahoma Supreme Court definitively addressed the issues at hand, *see Cassity*, 839 P.2d at 194-195; *Kay*, 276 P.2d at 758, we need not look to case law arising outside of Oklahoma, nor engage in policy consideration on a topic the Oklahoma Supreme Court has already undertaken.

In sum, we agree with the district court in its determination the release bars Ms. Kennedy's claims against Ford as a matter of law. The court properly granted Ford's motion for summary judgment.

**Attorney's Fees**

As we previously recounted, Ford filed both a counterclaim and a motion to recover costs and attorney's fees. The district court entered a minute order denying Ford's motion, but the order did not address the counterclaim. Later, in its order certifying the summary judgment order as final judgment pursuant to Fed. R. Civ. P. 54(b), the district court stayed "all proceedings as to the counterclaim."

Ford believes the district court considered its motion for attorney's fees "as a stand-alone request for fees in connection with the summary judgment," and believes the court did not rule on its counterclaim. It asks us to either: (1) "hold that Ford is entitled to judgment on its counterclaim as a matter of law," (2) hold its counterclaim is still pending before the district court, or (3) if we determine the district court dismissed the counterclaim, reverse the dismissal and remand for the purpose of determining the amount of money Ford is entitled to for attorney's fees and costs.

It is clear from the record the district court never ruled on Ford's counterclaim. In certifying its order granting summary judgment, the district court referenced its previous order "staying all proceedings as to the counterclaim pending resolution of the issues on appeal to the Tenth Circuit Court of Appeals." The district court's docketing statement likewise indicates the court did not rule on Ford's counterclaim. In addition to the fact we lack jurisdiction to review arguments pertaining to the pending counterclaim, *see Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1261 (10th Cir. 2001), no lower court decision exists for us to review. Accordingly, we are prohibited from addressing Ford's claims under its counterclaim.

Although Ford's Notice of Appeal states it is appealing the district court's denial of its motion for attorney's fees, and references in its appellate brief a supplemental appendix with supporting documents, no supplemental appendix is before this court. Ford did not transmit the motion to this court for review, nor did it attempt to explain how the district court erred in denying the motion. Because the evidentiary record before us is insufficient for our review, we must affirm the district court's order denying Ford's motion for attorney's fees. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm"); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (declining to review an insufficiently developed and framed issue).

**Conclusion**

For the reasons discussed above, we **AFFIRM** the district court's grant of summary judgment. We also **AFFIRM** the district court's order denying Ford's motion for attorney's fees. Ford's counterclaim remains pending before the district court.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge