**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**February 16, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

SHANNON SHARP; ERIC M.
THURSTON,

Plaintiffs - Appellants,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

Defendant - Appellee.

No. 23-6067
(D.C. No. 5:22-CV-00854-R)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

Shannon Sharp and Eric M. Thurston (claimants) appeal the district

court's dismissal of their putative class action against State Farm Mutual

Automobile Insurance Company (State Farm) alleging breach of contract.

According to claimants, State Farm breached its uninsured motorist (UM)

coverage policy by failing to provide claimants the full UM coverage limits

available to insureds, resident relatives, and guest passengers, even though

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

claimants paid UM coverage premiums on each policy. State Farm moved to dismiss the action on the ground that claimants failed to state plausibly how State Farm breached or otherwise acted contrary to the policy language. The district court granted State Farm's motion. Because claimants indeed fail to state a plausible breach-of-contract claim, we affirm.

## BACKGROUND

### I.    Factual Background

Claimants are Oklahoma residents and customers of State Farm.[1] State Farm sold them UM coverage through multiple auto insurance policies on several vehicles. Claimants paid separate premiums on each policy, including a separate premium for UM coverage. Each policy offered UM coverage that protected three groups of potential vehicle passengers: named insureds, resident relatives, and guest passengers.[2]

---

[1] We cabin our discussion to the facts contained in the amended class-action petition as presented to the district court. More detailed facts surrounding the auto accidents claimants experienced and the UM benefits they recovered appear in their prior related state court actions. *See Thurston v. State Farm Mut. Auto. Ins. Co.* (*Thurston I*), 478 P.3d 415 (Okla. 2020); Am. Petition, *Sharp v. Fennell*, No. CJ-2018-2720 (Okla. D. Ct. Okla. Cnty. filed Feb. 18, 2020). But those details are missing from the petition, and so we do not include or address them.

[2] State Farm's UM coverage promised to "pay compensatory damages for bodily injury," meaning an injury to an "insured . . . caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle." App. 129 (emphases omitted). Under the policy, "insured" includes (1) "you"; (2) "resident relatives"; and (3) "any other person while occupying . . . your car," whom we call guest passengers. *Id.* (emphases omitted).

By law, State Farm is required to offer this tripartite UM coverage for every policy it issues. *See* Okla. Stat. tit. 36, § 3636(A), (H). Before 2014, UM coverages provided under multiple policies with separate premiums would add together, or "stack." *Thurston v. State Farm Mut. Auto. Ins. Co.* (*Thurston I*), 478 P.3d 415, 419 (Okla. 2020) ("[W]e previously required insurers to stack, or aggregate, coverage when they charged multiple UM premiums for multiple vehicles, either on the same or separate policies."). But since 2014, UM coverage in Oklahoma no longer stacks automatically. *See* § 3636(B) ("Policies issued, renewed or reinstated after November 1, 2014, shall not be subject to stacking or aggregation of limits unless expressly provided for by an insurance carrier.").[3] So for people who buy multiple auto insurance policies, the UM coverage limits on each policy do not aggregate to create a singular UM recovery benefit, unless the insurance company says so explicitly.[4] *See id.*

---

[3] Because claimants' policies renewed after November 1, 2014, the amendment prohibiting automatic stacking applied to each of their policies with State Farm. *See* § 3636(B).

[4] Take this example. Say an insured owns three auto policies with State Farm covering three vehicles—one with a UM coverage limit of $25,000; one with $50,000; and one with $75,000. With nonstacking coverage, if the insured crashes with an uninsured motorist while riding in the first vehicle (carrying $25,000 of UM), then the insured will still recover the highest amount available among the three policies: $75,000.

But with stacked coverage, the insured could have combined all three UM benefits to recoup the largest possible sum: $150,000.

Claimants' auto policies with State Farm contain an Amendatory Endorsement that provides nonstacking coverage. The Amendatory Endorsement reads:

UNINSURED MOTOR VEHICLE COVERAGE . . .

If Other Uninsured Motor Vehicle Coverage Applies

1.    If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies *issued to you or any resident relative* by the State Farm Companies apply to the same bodily injury, then:

a.    the Uninsured Motor Vehicle Coverage limits of such policies *will not be added together* to determine the most that may be paid; and

b.    the maximum amount that may be paid from all such policies combined is *the single highest applicable limit provided by any one of the policies.* We may choose one or more policies from which to make payment.

App. 106 (emphases added).

In plainer English, this Amendatory Endorsement lets an insured recover UM benefits *once* per accident in the highest amount available among the insured's policies. Because the coverage is nonstacking, insureds and resident relatives derive no extra coverage from additional auto policies that carry lower (or the same) UM coverage than those the insured already owns because insureds and resident relatives will recover the highest amount anyway. But guest passengers only qualify as "insured[s] . . . while occupying" the vehicle covered by the UM policy. *Id.* at 129 (defining the third type of "insured" as

4

"any other *person* while occupying . . . your car"). So buying another UM policy for an additional vehicle carries some benefit because the new policy will protect guest passengers riding in *that* vehicle who would not otherwise have been covered by the insured's existing policies on *other* vehicles.

## II.    Procedural History

Based on State Farm's accepting full UM coverage premiums for nonstacking UM coverage, claimants filed a putative class-action petition in Oklahoma state district court against State Farm for breach of contract.[5] State Farm removed the case to federal district court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), based on diversity, asserted class size, and aggregated amount in controversy.[6] Soon after, State Farm moved to dismiss claimants' breach-of-contract claim.

In claimants' petition, they alleged that "for the first vehicle, State Farm provided UM coverage"—meaning the full, tripartite coverage for insureds,

---

[5] Claimants filed their initial class-action petition on March 11, 2022. But claimants never served that petition on State Farm, so they filed an amended petition later, on September 7, 2022. The amended petition is the one we discuss throughout this order.

[6] "CAFA permits a class action to be brought in or removed to federal court if the proposed classes include at least 100 persons with claims, the aggregate amount in controversy on all claims exceeds $5 million, [and] at least one proposed plaintiff and one defendant have diverse citizenship . . . ." *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017). Claimants are Oklahoma residents and State Farm is incorporated and holds its principal place of business in Illinois; so, the minimal diversity required under CAFA is met.

resident relatives, and guest passengers—but "for all other vehicles, it provided 'guest passenger' coverage," only. App. 97–98 ¶ 6. Yet despite this "different, lesser coverage," State Farm "charge[d] and accept[ed] full premiums" on each policy. *Id.* at 98 ¶¶ 6, 9. On this basis, claimants raised a breach-of-contract claim against State Farm for "refus[ing] to provide UM coverage protecting the named insured and their resident relatives" on all covered vehicles and sought "recovery of premiums charged by State Farm for vehicles other than the first insured vehicle." *Id.* at 99 ¶ 16, 101 ¶ 24.

State Farm moved to dismiss the action on several grounds. In part, State Farm asserted that claimants failed to state a claim for relief under federal civil pleading standards and Oklahoma state law.[7] Under Federal Rules of Civil Procedure 8 and 12(b)(6), State Farm argued that claimants failed to plead a valid breach-of-contract claim because their petition "fail[ed] to indicate what policy provision State Farm purportedly breached, and [it] fail[ed] to explain what State Farm did to allegedly violate such provision." App. 166. And under Oklahoma precedent, State Farm contended, claimants' theory for recovery

---

[7] State Farm additionally submitted that claimants' claims were barred by claim preclusion and issue preclusion, and that the claims offended Oklahoma's rule against claim-splitting due to Thurston's prior state court action against State Farm that arose from the same set of facts. *See Thurston I*, 478 P.3d at 417.

"was rejected by the Oklahoma Supreme Court" in the related state action, *Thurston I*.[8] App. 160.

Largely in light of *Thurston I*, the district court granted State Farm's motion to dismiss. After mining *Thurston I* for the findings and conclusions relevant to claimants' petition, the court observed that "this case presents the same issues as *Thurston I*, packaged in a slightly different form." *Sharp v. State Farm Mut. Auto. Ins. Co.*, No. Civ-22-854, 2023 WL 2816856, at *4 (W.D. Okla. Apr. 6, 2023). Given the sufficient "crossover" with the previous state court action, the district court determined that issue preclusion barred claimants' action in federal court.[9] *Id.* at *3.

---

[8] In *Thurston I*, Thurston sued State Farm in Oklahoma state court for fraud, breach of contract, bad faith, and failure to procure appropriate coverage because, he contended, State Farm's accepting multiple premiums on separate UM policies constituted an "express[] provi[sion] for stacking," under § 3636(B). 478 P.3d at 418. Reviewing an interlocutory summary adjudication ruling for State Farm, the Oklahoma Supreme Court analyzed the Amendatory Endorsement in Thurston's policy (the same one before us) and concluded that the language unambiguously prohibited stacking. *Id.* at 421. At the outset, the court rejected Thurston's argument under the reasonable-expectations doctrine because it found no ambiguity in State Farm's policy language. *Id.* Then, regarding the premiums, the court held that "[a]cceptance of separate premiums alone is not an express provision for stacking." *Id.* The court recognized that Oklahoma law mandated State Farm to offer full UM coverage under each auto policy it issued to Thurston. *Id.* (citing § 3636(A)).

[9] Though Sharp was not a party in *Thurston I*, the court reasoned that "the legal rationale" behind Sharp's allegations were "parallel" to Thurston's, and so "the findings of the court in *Thurston I* apply equally to [both] claims." *Sharp*, 2023 WL 2816856, at *4.

7

Claimants then filed a timely notice of appeal asking this court to review the district court's decision to grant State Farm's motion to dismiss. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review de novo the district court's decision on a Rule 12(b)(6) motion, applying the same standards as the district court. *Sagome, Inc. v. Cincinnati Ins. Co.*, 56 F.4th 931, 934 (10th Cir. 2023). To survive a motion to dismiss, a plaintiff's complaint "requires more than labels and conclusions," and the "[f]actual allegations must be enough to raise a right to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So though "we accept the well-pleaded facts alleged as true," we also "need not accept 'threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements.'" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (brackets omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Further, this court is "entitled to affirm a district court on alternative grounds" so long as "those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal." *Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016).

## DISCUSSION

Claimants implore that "[t]his case is simple." Principal Br. at 4. We agree. Claimants have not met their burden under Rule 12(b)(6) to allege a

plausible claim for breach of contract. And so we affirm the district court on that alternate ground, without reaching the preclusion issues or arguments.[10] *See Walton*, 821 F.3d at 1212.

State Farm and claimants agree that State Farm's UM coverage is nonstacking. Their disagreement springs from State Farm's accepting premiums for what claimants call "different, less valuable" coverage: the coverage on additional policies that provide an added UM benefit for guest passengers, only. App. 98 ¶ 6. Claimants perceive this imbalance between the premiums charged and coverage extended as a breach of State Farm's policy. State Farm disagrees and resolves that its policy language unambiguously forbids stacking and by extension provides the "three-pronged" UM coverage that claimants say was promised. Resp. Br. at 23. So according to State Farm, the UM coverage was delivered exactly as promised, and thus claimants fail to articulate a valid breach-of-contract claim. We agree.

---

[10] Much of claimants' briefing to this court focuses on issue preclusion and their argument that the district court erred in concluding that the claim alleged in this litigation is barred by *Thurston I*. In *Thurston I*, Thurston claimed that State Farm's accepting the premiums created an express provision for stacking. *Thurston I*, 478 P.3d at 418. Before this court, claimants allege that State Farm's accepting multiple premiums on separate policies constituted a breach of contract. Claimants highlight the difference between the state and federal actions by distinguishing the recovery sought in each case. Claimants explain that had Thurston "prevailed in *Thurston I*, he would have had access to $75,000 in additional stacked coverage," whereas here, "if Thurston prevails . . . he will individually recover several hundred dollars in [premium] overcharges collected by State Farm." Principal Br. at 14.

Because claimants fail to allege a plausible breach-of-contract claim, we decline to address issue preclusion or the attendant arguments.

9

Because this is a diversity action, Oklahoma's contract law applies. *Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013). In Oklahoma, a breach-of-contract claim requires a claimant to show "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Auto. Ins. Co.*, 488 P.3d 743, 748–49 (Okla. 2021). Under the second element, claimants have not sufficiently alleged that State Farm in fact breached the policy.

Claimants argue that their claim relies on "the express terms of the insurance contract," which they "extensively quote[]" in the petition. Principal Br. at 15. From the policy, claimants note that the UM provision purportedly covers "you," "resident relatives," and "any other person while occupying . . . your car"; for the first two groups, they argue, "State Farm refuses to provide for any UM coverage purchased after the coverage on the first insured vehicle." App. 99 ¶ 14. Though claimants acknowledge that "State Farm does provide coverage for subsequent vehicles for . . . guest passenger[s]," they maintain that they "would not have paid for 'UM' coverage if they had known they were actually purchasing only [guest passenger] UM." *Id.* ¶¶ 14–15.

The narrower coverage that State Farm provides on "subsequent vehicles," to which claimants object, is a byproduct of the policy's nonstacking arrangement. On the stacking point, claimants allege that, "[b]ased on the parties' express contractual relations and their prior course of dealing," they "had a reasonable expectation that paying a separate premium for UM coverage

under multiple policies would stack." App. 98 ¶ 11. But claimants also acknowledge that "State Farm disclosed in an 'Amendatory Endorsement' that the '[UM coverage] limits of such policies will not be added together to determine the most that may be paid.'" *Id.* Then, they repeat the policy's guarantee that "the amount paid will be the 'single highest applicable limit provided by any one of the policies.'" *Id.*

These quotations represent the extent of claimants' effort to identify a provision of the policy that State Farm breached. But fatal to their claim, not once do claimants show that State Farm violated any of the above-quoted terms or that State Farm ever failed to deliver claimants UM coverage in the "highest applicable limit provided," as the policy promises. *See id.*

The most claimants do is assert that (1) "State Farm failed and refused to advise [them] . . . that they were purchasing two different kinds of coverage," which we understand to mean the pre-2014 stacking coverage and the post-2014 nonstacking coverage; and that (2) "[b]y continuing to tender separate premiums for UM coverage to State Farm, [claimants] were requesting UM coverage, and State Farm was promising to deliver same." *Id.* ¶¶ 6, 10. Even construing these claims liberally, we struggle to reconcile them with claimants' later admission that "State Farm disclosed in an 'Amendatory Endorsement' that the '[UM coverage] limits . . . will not be added together.'" App. 98 ¶ 11. This statement reveals claimants' understanding that their UM coverage no longer stacked after 2014. And though claimants may feel that they were

overcharged for the UM premiums paid after this policy change, that grievance doesn't fit within the elements of a breach-of-contract claim.

Oklahoma law directs that "a breach occurs when a party fails to perform a duty arising under or imposed by agreement." *Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 151 (Okla. 1988). Claimants argue that State Farm failed to perform its duty to deliver "the coverage promised," App. 101 ¶ 25, which claimants consistently call "three-pronged UM coverage," Principal Br. at 14. But practically, the "three-pronged UM coverage" claimants seek requires stacking. And as discussed above, all agree that the Amendatory Endorsement eliminated stacking. So in implementing the Amendatory Endorsement, State Farm essentially revoked any promise that it would provide UM coverage the same as it had before 2014. Claimants cannot fault State Farm for failing to deliver something it never promised, especially when the Amendatory Endorsement advised them of the policy change and claimants continued to pay the premiums anyway. Based on the petition as alleged, we cannot ascertain a plausible breach-of-contract claim.

Again, we suspect that claimants' true quarrel lies with their feeling that they overpaid for guest passenger coverage on their later-purchased UM policies. *See* Principal Br. at 15 (arguing that "[w]hat State Farm provided was only the third prong of UM coverage . . . known as 'guest passenger coverage'" which was "less valuable," despite charging the same premium). And maybe they did. But the crux of that dispute lies with the consideration, not the

performance, of the policy. Adequacy of consideration falls outside our bailiwick assuming the claimants consented freely to the policy terms. *See Cassity v. Pitts*, 839 P.2d 192, 195 (Okla. 1992) ("Even gross inadequacy of consideration, standing alone, is not enough upon which to cancel a contract." (citation omitted)); *Meadows v. Neal*, 174 P. 753, 754 (Okla. 1918) ("In the absence of fraud or overreaching, the adequacy of the consideration is solely the business of the parties." (citation omitted)). Seeing no allegation to the contrary, we assume consideration is adequate.

At bottom, claimants agreed to pay the separate premiums despite State Farm's "disclos[ure]" that the UM coverage would not stack. App. 98 ¶ 11. State Farm may have offered claimants a bad deal, but they agreed to it. And a bad deal, alone, does not amount to a breach of contract.[11]

## CONCLUSION

For these reasons, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[11] Claimants argue for the first time in their reply brief that the district court erred in declining to give them leave to amend their petition. We do not address this argument. *See Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1146 (10th Cir. 2023) ("The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." (citation omitted)).