2010 OK 33

Mel Jean WEBER, as Personal Representative of the Estate of Tom Ruble; Donald Claussen; and Zelma Beers, Individually and as Class Representatives, Plaintiffs/Appellees,

Coleen Mannering; Charles Kenneth Dodson, Trustee of the Charles Kenneth Dodson Revocable Trust Dated the 17th day of April, 1998; and Don Garner, Individually and as Class Representatives, Intervenor Plaintiffs/Appellees,

v.

MOBIL OIL CORPORATION, a corporation; Exxonmobil Oil Corporation, a corporation; Mobil Exploration And Producing, North American, Inc., a corporation; Mobil Exploration and Producing, U.S., a corporation; and Mobil Natural Gas, Inc., a corporation, Defendants/Appellants.

No. 106,241.

Supreme Court of Oklahoma.

April 13, 2010.

Rehearing Denied Dec. 6, 2010.

John J. Griffin, L. Mark Walker, Crowe & Dunlevy, P.C., Oklahoma City, OK, Patton G. Lochridge, McGinnis, Lochridge & Kilgore, L.L.P., Brian S. Engel, Barrett, Burke, Wilson, Castle, Daffin, Frappier & Engel, L.L.P., Austin, TX, for Defendants/Appellants.

C.B. Graft, Clinton, OK, Jeremy A. Thurman, Napoli Bern, L.L.P., Robert D. Tomlinson, Kenneth N. McKinney, Tomlinson & O'Connell, P.C., Oklahoma City, OK, for Plaintiffs/Appellees and Intervenor Plaintiffs/Appellees.

WATT, J.:

¶1 We granted certiorari to address a single issue: whether the claims of fraud, deceit, constructive fraud, and punitive damages are appropriate for class certification? The facts reveal that: the majority of the royalty owners appear to be Oklahoma citizens; Mobil made representations as to the appropriate payments in Oklahoma; the representations were made and acted upon primarily in Oklahoma but also in other states; Mobil made the representations in Oklahoma to the royalty owners and to the Oklahoma Corporation Commission (Corporation Commission) in its successful attempt to obtain approval of the Plan of Unitization covering the Putnam Oswego Unit; Mobil did business associated with the production of the oil and gas from the Putnam Oswego Unit in Oklahoma; and the oil and gas products were produced exclusively in Oklahoma from this state's energy reservoirs. Under these facts, we hold that the trial court did not abuse its discretion[1] in certifying a class to address the enumerated claims.[2]

---

1. *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, ¶ 10, 969 P.2d 337; *Shores v. First City Bank Corp.,* 1984 OK 67, ¶ 4, 689 P.2d 299.

2. This Court has recognized that class certification may be appropriate in a cause involving cost disputes in the oil industry. See, *Cactus Petroleum Corp. v. Chesapeake Operating, Inc.,* note 11, infra. Similar factors to those presented herein led to classification in *Grant Thornton LLP v.*

*Suntrust Bank,* 133 S.W.3d 342 (Tex.App.2004) [Fraud and misrepresentation claims held certifiable where: class members received representations outside state; company making representations was headquartered in state; audit occurred in state; and some class members resided in state.].

¶ 2 Our determination is supported by this Court's decision in *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337. In *Black Hawk*, we held that potential weaknesses in fraud claims will not serve as grounds for refusal to certify a class and that where standardized written misrepresentations have been made to class members, class certification is appropriate. Also instructive, yet factually distinguishable is *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, 81 P.3d 618, *cert. denied*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004) in which we determined that common questions of law on fraud claims did not predominate for purposes of class certification. Nevertheless, *Ysbrand* also pointed to the importance of the consideration of § 148 of the *Restatement (2nd) of Conflict of Laws* and the comments thereto in determining whether fraud and misrepresentation claims may be properly certified in a class action.

## Factual and Procedural Background

¶ 3 This cause has a long and tortured history which has generated a voluminous appellate record. In 1959, minerals began to be produced from the Putnam Oswego Field in west-central Oklahoma. To recover previously flared off products, Mobil built the Putnam Oswego Gas Plant in 1964. The plant is located in Thomas, Oklahoma. Four years later, in 1968, Mobil and other operators filed an application with the Oklahoma Corporation Commission (Corporation Commission) seeking formation of the Putnam Oswego Unit in an attempt to maintain and increase production from the field through secondary recovery operations.

¶ 4 To convince royalty owners of the efficacy of unitization, Mobil sent a letter dated April 11th, 1968 to royalty owners providing in pertinent part:

"... The entire cost of unitization and pressure maintenance operations will be paid for by the Working Interest Owners, and, as in the past, **your interest will be free and clear of any operating or investment costs....**" [3] [Emphasis provided.]

The same language appears in the Plan of Unitization approved by the Corporation Commission providing in pertinent part:

"... A one-eight (1/8) part of the Unit Production allocated to each tract shall in all events be regarded as royalty to be distributed to and among, or the proceeds thereof paid to, the Owners of Royalty Interest, **free and clear of all Unit Expense and free of any lien therefore....**" [4] [Emphasis provided.]

Thereafter, Mobil adopted the Fiske Formula[5] as a tool for paying royalty owners. Pursuant to this formula, royalty owners were paid 85.17% of gross income from the sale of oil and gas products and Mobil retained 14.83% of sale proceeds.

¶ 5 The cause was filed in Custer County on May 18, 2001, as a class action on behalf of royalty owners. The class representatives alleged that Mobil's utilization of the Fiske Formula resulted in the underpayment of royalties. Mobil sought removal to federal court. However, in January 2002, the federal court granted a motion to remand where the class representatives were allowed to amend their petition to add additional representative plaintiffs and defendants but were denied the right to add claims for conspiracy and breach of the duty to market. Mobil sought dismissal of a second amended petition which was denied in December of 2004.

¶ 6 During the pendency of proceedings in Custer County, another group of plaintiffs filed a similar class action in federal court on

---

3. Exhibit 11, Vol. 2, Exhibits to Motion for Class Certification, Letter from Mobil Oil Corporation to Royalty Owners, dated April 11, 1968.

4. Plan of Unitization of Putnam Oswego Unit, filed April 19, 1968, § 5.3. Record, File No. 1, p. 25.

5. The Fiske Formula was originated by Leland E. Fiske when he was Chief Oil and Gas Engineer for the Dallas Region of the Internal Revenue Service. Under the formula, the price for gas is determined by deducting from the sale price of products, the costs of operating the absorption plant, the depreciation on the plant, and a reasonable return on the investment in the plant, usually 10 percent per year. L. Fiske, "Tax Aspects of Secondary Recovery Operations," 6 RMMLF–INST 6 (1961).

October 13, 2004. The plaintiffs involved in the Custer County action requested intervention in the federal cause seeking its dismissal. The dismissal was granted in September, 2005; and, the federal court plaintiffs filed a motion to intervene in the Custer County action. Later that month, intervention was granted based on an understanding that the intervenors would be bound by what had previously transpired in the district court action. Shortly thereafter, a group of defendants again sought removal to federal court which was denied on July 20, 2006.

¶ 7 The order certifying the class was filed on July 31, 2008. As finally defined, the class consists of all persons or entities who own or have owned a royalty interest (as that term is defined by the plan of unitization) in the unit from the effective date of the plan, November 1, 1968 to the present together with their heirs, legatees, beneficiaries, executors, representatives, successors, and assigns. Also included are persons or entities owning or who have owned a royalty interest in a tract included within the unit from which Mobil took and received in kind or separately disposed of all or a portion of the unitized substances allocated to said tract together with their heirs, legatees, beneficiaries, executors, representatives, successors, and assigns. Excluded from the class are: the United States government and its agencies; the officers and directors of the defendants; all subsidies or affiliates under the control of the defendants; legal representatives, heirs,

successors, or assigns of any excluded person or entity; overriding royalty interest owners to the extent of their overriding royalty interest; and owners of production payments to the extent of their production payment interest.[6]

¶ 8 The class contains approximately sixteen-hundred (1,600) members. Mobil represents that royalty owners reside in forty (40) different states. However, neither party provides precise data on geographic distribution of the class members' residences. Nevertheless, it appears that Oklahoma citizens constitute a majority of the royalty owners.[7]

█ ¶ 9 The class representatives alleged thirteen theories for relief: 1) breach of fiduciary duty; 2) conversion; 3) actual fraud; 4) breach of contract; 5) breach of the duty of good faith and fair dealing; 6) violation of the Production Revenue Standards Act, 52 O.S. 2001 § 570.10; 7) unjust enrichment; 8) accounting; 9) constructive trust; 10) breach of the Plan of Unitization; 11) deceit; 12) constructive fraud; and 13) punitive damages. After conducting a hearing spanning five days, the trial court issued its findings of fact, conclusions of law and order finding the class to be certifiable pursuant to 12 O.S.2001 § 2023 [8] on July 31, 2008. In its opinion promulgated on October 23, 2009, the Court of Civil Appeals affirmed in part and reversed in part. It determined that the trial court was correct in certifying all claims except those for conversion,[9] fraud, deceit,

6. Hearing on Motion to Strike/Motion to Intervene, September 22, 2005, Record, File No. 4, p. 652.

7. This determination was made from the examination of Exhibit 88 to the Motion for Class Certification and was gleaned by counting the number of Oklahoma addresses to which royalty checks appear to have been disbursed. The document seems to be a pay deck listing the royalty owners and their addresses. The pay deck is attached to a letter dated June 18, 1999 and addressed to an attorney for Mobil from an attorney with Hall, Estill, Hardwick, Gable, Golden & Nelson. Pay decks are set up by analysts to keep track of ownership of oil and gas properties. See, P. Gushee, P.C., "How the Ringmaster Orchestrates in a Three-Ring Circus: Communications between the Company, Attorney, and

Landman," 2007 No. 4 RMMFL–INST Paper No. 22. The class representatives do assert that the majority of Putnam Oswego Unit owners were Oklahoma residents at least in 1998. Exhibit 95, Exhibits o Motion for Class Certification, entitled "Choice of Law Analysis for Each Category of Claim."

8. Section 2023 of title 12 was amended effective November 1, 2009. The amendments are found in subsection C of the statute and do not relate to the trial court's decision to certify the instant cause.

9. Conversion does not lie for a debt. *Welty v. Martinaire of Oklahoma, Inc.*, 1994 OK 10, ¶ 6, 867 P.2d 1273; *Steenbergen v. First Fed. Sav. & Loan*, 1987 OK 122, ¶ 8, 753 P.2d 1330.

and constructive fraud. The petition for certiorari was filed on November 12, 2009. The class representatives filed a notice of subsequent jurisprudence on January 27, 2010. We granted certiorari on February 1, 2010 to address a single issue: whether the trial court erred in certifying for resolution by the class the claims of fraud, deceit, constructive fraud, and punitive damages.

### Standard of Review

¶10 Oklahoma courts may balance and analyze the interests in multi-state controversies in deciding the applicable law.[10] Orders certifying a class will not be disturbed unless an abuse of discretion is shown.[11] Because an order of certification is always subject to modification prior to judgment on the merits, a close question should be resolved in favor of sustaining class certification.[12] The issue on appeal is not whether the trial court could have certified a class but whether it was an abuse of discretion not to certify.[13] If the record demonstrates that the requisites for class action have been met, no abuse of discretion has occurred[14] and the appellate court must affirm.[15] We review *de novo* whether the trial court applied the correct legal standards in granting certification.[16]

¶11 THE MAJORITY OF ROYALTY OWNERS APPEAR TO BE OKLAHOMA CITIZENS. MOBIL MADE WRITTEN REPRESENTATIONS AS TO THE APPROPRIATE ROYALTY PAYMENTS IN OKLAHOMA. THE REPRESENTATIONS WERE MADE AND ACTED UPON LARGELY IN OKLAHOMA. MOBIL MADE THE REPRESENTATIONS TO THE ROYALTY OWNERS AND TO THE OKLAHOMA CORPORATION COMMISSION. MOBIL DID BUSINESS IN OKLAHOMA ASSOCIATED WITH THE PRODUCTION OF OIL AND GAS FROM THE PUTNAM OSWEGO UNIT. OIL AND GAS PRODUCTS WERE PRODUCED EXCLUSIVELY IN OKLAHOMA FROM THIS STATE'S ENERGY RESERVOIRS. UNDER THESE FACTS, THE CLAIMS OF FRAUD, DECEIT, CONSTRUCTIVE FRAUD, AND PUNITIVE DAMAGES ARE APPROPRIATE FOR CLASS CERTIFICATION.

¶12 The class representatives argue that class certification of the fraud and associated causes of action are supported by this Court's opinion in *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337 holding that potential weaknesses in fraud claims will not serve as grounds for refusal to certify a class and that where standardized writ-

**10.** *Black Hawk Oil Co. v. Exxon Corp.*, see note 1, supra; *Shores v. First City Bank Corp.*, see note 1, supra.

**11.** *Black Hawk v. Exxon*, see note 1, supra; *Cactus Petroleum Corp. v. Chesapeake Operating, Inc.*, 2009 OK 67, ¶12, 222 P.3d 12; *Masquat v. DaimlerChrysler, Corp.*, see note 17, infra.

**12.** *Perry v. Meek*, 1980 OK 151, ¶19, 618 P.2d 934; *Lobo Exploration Co. v. Amoco Production Co.*, 1999 OK CIV APP 112, ¶2, 991 P.2d 1048, cert. denied, 529 U.S. 1124, 120 S.Ct. 1996, 146 L.Ed.2d 821 (2000).

**13.** *Cactus Petroleum Corp. v. Chesapeake Operating, Inc.*, see note 11, supra; *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir.1995).

**14.** *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶9, 164 P.3d 1028; *Black Hawk Oil Co. v. Exxon Corp.*, see note 1, supra.

**15.** *Cuesta v. Ford Motor Co.*, see note 17, infra; *Black Hawk Oil Co. v. Exxon Corp.*, see note 1, supra.

**16.** *Cuesta v. Ford Motor Co.*, see note 17, infra; *Masquat v. DaimlerChrysler Corp.*, see note 17, infra; *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, ¶1, 41 P.3d 366.

ten misrepresentations have been made to class members, class certification is appropriate. Mobil disputes the efficacy of *Black Hawk* relying instead on our opinion in *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, 81 P.3d 618, *cert. denied*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004) which denied certification of the fraud issue where the misrepresentations involving the sale of vehicles were made and received in fifty-one (51) jurisdictions. We agree with the class representatives that *Black Hawk* supports their position and find *Ysbrand* distinguishable on the facts yet instructive in its application of § 148 of the *Restatement (2nd) of Conflict of Laws* and the comments thereto.

¶ 13 Some consideration of the merits is appropriate in a class certification, but only insofar as it informs what individual issues might be a part of the adjudicatory process.[17] Here, the Court of Civil Appeals reached an issue involving the merits of the cause determining that the class representatives had not "establish[ed] any element of a fraud claim." [18]

¶ 14 The issue resolved in *Black Hawk* is similar to the one presented here: whether the oil company properly reimbursed royalty owners for the sale of oil and gas products in their monthly accounting. We held in *Black Hawk* that potential weaknesses in fraud claims will not serve as grounds for refusal to certify a class and that where standardized written misrepresentations have been made to class members, certification need not be denied. Here, identical letters indicating that unitization would result in no imposition of costs of operation were transmitted to all royalty owners. The same representation was made to the Corporation Commission.

¶ 15 In *Ysbrand*, we decertified a fraud claim utilizing the factors enumerated in § 148 of the *Restatement (2nd) of Conflict of Laws* and the comments thereto. In so doing, we determined that where each class member received the alleged misrepresenta-

tion involving air bags incorporated in vehicles sold in each of the fifty-one (51) jurisdictions, presumably their state of residence, certification of the fraud claim was inappropriate. Nevertheless, when the same factors considered in *Ysbrand* are applied here, it is clear that there was no abuse of discretion[19] in certifying the fraud issue.

¶ 16 Here, as in *Ysbrand*, we look to § 148 and the comments thereto for direction in resolving the issue of class certification on the fraud-related issues. Subsection 2 of § 148 addresses the situation presented. It provides in pertinent part:

"When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."

In *Ysbrand*, the Court looked to the comments to this section and determined that

---

**17.** *Cuesta v. Ford Motor Co.*, 2009 OK 24, ¶ 25, 209 P.3d 278, *cert. denied*, —— U.S. ——, 130 S.Ct. 258, 175 L.Ed.2d 131 (2009); *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 10, 195 P.3d 48.

**18.** *Weber v. Mobil Oil Corp.*, No. 106,241, Oklahoma Court of Civil Appeals (2009), ¶ 36.

**19.** *Cuesta v. Ford Motor Co.*, see note 17, supra; *Black Hawk Oil Co. v. Exxon Corp.*, see note 1, supra.

because the class members presumably received the representation in their home state, their place of domicile, the laws of each of the fifty-one (51) jurisdictions would be applicable making certification of the fraud claim impracticable.

¶ 17 Here, unlike the situation in *Ysbrand*, the majority of the members of the class appear to be Oklahoma residents.[20] In addressing consideration of (2)(a), above, the *Restatement Comments* provide that a plaintiff's reliance is a more important contact when it is confined to a single state than when it is divided among two or more states. Where, as in the instant cause, the reliance takes place in one state and a lesser part in another, the first state (Oklahoma) has a more weighty contact with the occurrence than does the latter.[21] Under this analysis, application of Oklahoma law to the fraud issue takes precedence over the laws of one of the other forty (40) states. In addition, the majority of the representations made were to and received by Oklahoma citizens in their state of domicile, Oklahoma.

¶ 18 In *Ysbrand*, the representations were made in more than one state. Here, all the representations arose from an attempt by Mobil to obtain unitization of the Putnam Oswego Field. They were made in Oklahoma to a governmental entity, the Corporation Commission, and to the majority of the class members. The commentary to the *Restatement* provides that, in such situations, this element, in and of itself, is important.[22]

¶ 19 Other *Restatement Comments* also support allowing the fraud claim to go forward as a class action. The comments provide that where the subject of the transaction is a tangible thing, the place where the thing is situated at the time of the transaction is a significant contact especially where both parties are aware that the thing was situated in this place at that time. Furthermore, the situs of the thing is particularly relevant if it involves an interest in land.[23] It is undeniable that the oil and gas products sought to be unitized were to be pumped from the Putnam Oswego Unit located entirely within the boundaries of Oklahoma. Upon their production, they became tangible personal property[24] collected and sold from Oklahoma reservoirs.[25]

¶ 20 The facts presented, analyzed in the light *Black Hawk* and *Ysbrand* along with § 148 and the comments thereto, weigh in favor of certification. Therefore, we hold that the claims of fraud, deceit, constructive fraud, and punitive damages are appropriate for class certification.

## CONCLUSION

¶ 21 On remand, the question to be determined by the trial court is whether Mobil was justified in paying royalties at 85.17% of the gross sale price of minerals extracted

20. See note 7, supra, and discussion therein.

21. *Restatement* Comment to § 148 Fraud and Misrepresentation providing in pertinent part:
    "... Comment on Subsection (2):
    ... *f. The place, or places, where the plaintiff acted in reliance upon the defendant's representations....* When a major part of the action in reliance takes place in one state and a lesser part in another, the first state has a more important contact with the occurrence than does the later...." [Italics in original.]

22. "... Comment on Subsection (2):
    ... *h. The place where the defendant made the false representations ....* The making of the representations provides a more important contact when the representations are made only in one state than when they are made in two or more. When a major part of the representations is made in one state and a lesser part in another, the first state has a more important contact with the occurrence than does the latter...." [Italics in original.]

23. *Restatement* Comment to § 148 Fraud and Misrepresentation providing in pertinent part:
    "... Comment on Subsection (2):
    ... *i. Other contacts* .... When the subject of the transaction between the parties is a tangible thing the place where the thing is situated at the time of the transaction is a contact of some importance provided, at least, that both parties were aware that the thing was situated in this place at that time. This contact is of particular importance when the subject of the transaction is land...." [Italics in original.]

24. *Koch Fuels, Inc. v. State ex rel. Oklahoma Tax Comm'n*, 1993 OK 140, ¶ 12, 862 P.2d 471; *Champlin Exploration, Inc. v. Western Bridge & Steel Co.*, 1979 OK 108, ¶ 16, 597 P.2d 1215.

25. Royalty to be derived from future mineral leases is real property and contracts involving such royalty are governed by the law of the situs. *Denney v. Teel*, 1984 OK 63, ¶ 8, 688 P.2d 803, 56 A.L.R.4th 527.

from the Putnam Oswego Unit where it represented that royalty payments would be free and clear of unit expense.[26] We express no opinion on what will or should be the ultimate outcome in that proceeding. Our task today is merely to determine whether there was an abuse of discretion in certifying the claims of fraud, deceit, constructive fraud, and punitive damages. Under the facts presented, considered by us here in light of this Court's pronouncements in *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, 969 P.2d 337 and *Ysbrand v. DaimlerChrysler Corp.,* 2003 OK 17, 81 P.3d 618, *cert. denied,* 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004) along with § 148 of the *Restatement (2nd) of Conflict of Laws* and the comments thereto, we determine that the trial court did not abuse its discretion in certifying a class to address the enumerated claims.

**COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT AFFIRMED; CAUSE REMANDED.**

EDMONDSON, C.J., HARGRAVE, OPALA, WATT, COLBERT, REIF, JJ., concur.

TAYLOR, V.C.J., WINCHESTER, J., dissent.

KAUGER, J., Not Participating.

---

26. See ¶ 4, *supra,* and discussion therein.