FILED
United States Court of Appeals
Tenth Circuit

October 2, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID LANDON SPEED,

      Plaintiff - Appellee,

v.

JMA ENERGY COMPANY, LLC,

      Defendant - Appellant.

No. 17-7040

_____

**Appeal from the United States District Court
For the Eastern District of Oklahoma
(D.C. No. 6:17-CV-00006-RAW)**
_____

Robert D. McCutcheon of JMA Energy Company, LLC, Oklahoma City, Oklahoma (Mark D. Christiansen and Andrew J. Morris of McAfee & Taft, P.C., Oklahoma City, Oklahoma, with counsel on the briefs), for Defendant-Appellant.

Reagan E. Bradford of Lanier Law Firm, Oklahoma City, Oklahoma (W. Mark Lanier, Kevin P. Parker and M. Michelle Carreras of Lanier Law Firm, Houston, Texas, with counsel on the brief), for Plaintiff-Appellee.
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Plaintiff David Landon Speed filed a petition (the Petition) in the District Court of Hughes County, Oklahoma, asserting a putative class action against defendant JMA Energy Company, LLC. He alleged that JMA had willfully violated an Oklahoma statute that requires payment of interest on delayed payment of revenue

from oil and gas production. He further asserted that JMA fraudulently concealed from mineral-interest owners that it owed interest due under the statute, intending to pay only those who requested interest. JMA removed the case to the United States District Court for the Eastern District of Oklahoma, asserting that the district court had jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

After conducting jurisdictional discovery, Mr. Speed filed an amended motion to remand the case to state court. The district court granted this motion, relying on an exception to CAFA that permits a district court to decline to exercise jurisdiction over a class action meeting certain citizenship prerequisites "in the interests of justice and looking at the totality of the circumstances," based on its consideration of six enumerated factors. *Id.* § 1332(d)(3). On appeal JMA challenges the district court's remand order. Because the district court properly considered the statutory factors and did not abuse its discretion by remanding to state court, we affirm.

## I.

## A.

"In enacting CAFA, Congress sought to correct state and local court abuses in class actions such as bias against out-of-State defendants by expanding federal diversity jurisdiction over interstate class actions." *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337 (5th Cir.), *cert. denied*, 136 S. Ct. 2522 (2016) (brackets and internal quotation marks omitted). In general, CAFA permits a class action to be brought in or removed to federal court if the proposed classes include at least 100 persons with claims, the aggregate amount in

controversy on all claims exceeds $5 million, at least one proposed plaintiff and one defendant have diverse citizenship, and the primary defendants are not governmental entities or officials against whom a federal court cannot order relief. *See* 28 U.S.C. § 1332(d); *Arbuckle Mountain Ranch*, 810 F.3d at 337.

Even when these jurisdictional requirements are met, CAFA recognizes three statutory exceptions. Two exceptions are mandatory. The home-state exception requires the district court to decline jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). And the local-controversy exception requires the district court to decline jurisdiction when (1) greater than two-thirds of the proposed class members and at least one defendant from whom significant relief is sought, and whose alleged conduct forms a significant basis for the class members' claims, are citizens of the State in which the action was originally filed; (2) the principal injuries resulting from the alleged or related conduct of the defendants were incurred in the State in which the action was originally filed; and (3) no other class actions have been filed asserting the same or similar factual allegations against any of the defendants during the three-year period preceding the filing of the class action. *See id.* § 1332(d)(4)(A). Neither of these exceptions is at issue here. In addition, a

3

district court may decline to exercise jurisdiction under the discretionary exception in § 1332(d)(3), the exception the district court relied on here.[1]

## B.

The Petition recites that Mr. Speed is the owner of an oil-and-gas well in Oklahoma, which is operated by JMA. JMA is obligated to pay him royalty and interest payments on revenue from the well's oil and gas production. Mr. Speed asserts that when operators such as JMA fail to pay proceeds to interest owners by the deadline fixed by statute, Oklahoma law requires them to compensate the owners by including interest on the untimely payments. *See* Okla. Stat. tit. 52, § 570.10(D) (2010). The Petition further alleges on information and belief that JMA "routinely delays payment of production proceeds and denies Owners the interest payments to which they are entitled." Aplt. App. at 16. It claims these actions amount to fraud, because (1) JMA "knowingly and intentionally took on the duties associated with such interests," including the duty to pay the oil and gas proceeds to the owners as required by Oklahoma law; (2) JMA was aware that under Oklahoma law "it owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed"; (3) JMA "intended to avoid its obligation to pay the statutorily mandated interest and only pa[id] when an Owner specifically request[ed]

---

[1]    This exception is also known as the "discretionary jurisdiction provision," *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir. 2007); the "'interests of justice' exception," *Hunter v. Medstar Georgetown Univ. Hosp.*, 144 F. Supp. 3d 28, 28 (D.D.C. 2015) (quoting 28 U.S.C. § 1332(d)(3)); and the "defendant's home-state exception," William B. Rubenstein, *Newberg on Class Actions* § 6:21 (5th ed. 2017).

4

payment of the statutory interest"; and (4) "Plaintiff and the Class relied on and trusted JMA to pay them the full O&G [oil and gas] Proceeds to which they were entitled under Oklahoma law." *Id.* at 23–24. The Petition seeks equitable and injunctive relief and damages on behalf of similarly situated interest owners who have received untimely payments on which JMA failed to pay statutory interest. The Petition defines the Class, and those excluded from it, as follows:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendant (or Defendant's designee) for O&G Proceeds from Oklahoma wells; and (2) whose payments did not include statutory interest.

> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

*Id.* at 18.

JMA removed the case to federal court under CAFA. Mr. Speed responded with a motion to remand, arguing that the jurisdictional requirements of CAFA were not met and that the mandatory and discretionary exceptions to CAFA, if proved, required remand. The district court permitted the parties to conduct discovery on the jurisdictional issues. The parties later stipulated that (1) the claims aggregated $5 million, and (2) more than one-third, but fewer than two-thirds, of the proposed class members are citizens of the State of Oklahoma. As a result of this discovery and the stipulation, Mr. Speed filed an amended motion to remand, asserting only the discretionary exception to CAFA jurisdiction.

5

The discretionary exception "allows a federal court to decline to exercise jurisdiction over a class action that is otherwise covered by CAFA based on six enumerated factors." *Dutcher v. Matheson*, 840 F.3d 1183, 1194 (10th Cir. 2016). "[T]o qualify for consideration of these factors, the plaintiffs must first establish two prerequisites:  [1] greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and [2] the primary defendants are citizens of the State in which the action was originally filed." *Id.* (brackets in original, internal quotation marks omitted); *see also* 28 U.S.C. § 1332(d)(3).  As noted, the parties stipulated to the first prerequisite.  And it is undisputed that JMA is a citizen of the State of Oklahoma, which satisfies the second prerequisite.  The district court was therefore required to consider the following six factors:

> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

II.

We review for abuse of discretion the district court's order remanding under the discretionary exception in § 1332(d)(3). *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 809 (5th Cir. 2007). "[A] district court always abuses its discretion when it errs on a legal question, and we decide the presence or absence of legal error de novo." *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161, 1162 (10th Cir. 2016). When applying § 1332(d)(3), the district court's discretion is not unfettered but must be guided by the six factors. *See Preston*, 485 F.3d at 810. No single factor is dispositive; not all need to favor remand for the court to decline jurisdiction. *See* William B. Rubenstein, *Newberg on Class Actions* § 6:21 (5th ed. 2017) ("The plaintiff need not satisfy all [six] factors; courts employ a balancing test, taking into consideration the totality of the circumstances."). So long as the district court's factual findings are not clearly erroneous and it applied the correct legal standard, we will defer to its ruling if the "decision falls within the bounds of rationally available choices given the facts and law involved." *Soseeah v. Sentry Ins.*, 808 F.3d 800, 808 (10th Cir. 2015) (discussing abuse-of-discretion review of class-certification decision under Fed. R. Civ. P. 23).

Because JMA established that the elements for removal under CAFA were met, the burden shifted to Mr. Speed to show that remand was appropriate. *See Dutcher*, 840 F.3d at 1190. In meeting this burden, he did not benefit from any presumption against removal, because "Congress enacted [CAFA] to facilitate

7

adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

JMA would further amplify Mr. Speed's burden in two ways. First, it argues that courts should apply a sliding scale between retention and remand, so that "as the percent of citizens of the State where the case was originally filed decreases toward one-third, the presumption in favor of retention increases, and . . . as the percent of citizens of the State where the case was originally filed increases toward two-thirds, the presumption in favor of retention decreases." Aplt. Opening Br. at 15. Perhaps, but such a sliding scale would tell us almost nothing in this case, because Oklahoma citizens constitute 48.46% of prospective plaintiffs, near the middle of the 1/3 to 2/3 range. *See* Aplt. App. at 55. We leave the issue for a later day.

Second, JMA argues that because Mr. Speed bears the burden to justify a remand, a "neutral" factor should count *against* remand in the overall analysis rather than being viewed as strictly neutral. We disagree. The district court is charged with evaluating the factors in the aggregate. We see no statutory command, nor any sound reason, to press an additional thumb on the scale.

III.

Thoroughly addressing each of the statutory factors, the district court determined that all six weighed in favor of remand. We consider each in turn and see no legal error or other abuse of discretion.

8

*National or Interstate Interest*

The first factor is "whether the claims asserted involve matters of national or interstate interest." 28 U.S.C. § 1332(d)(3)(A). The more a class action implicates national or interstate interests, the more it serves Congress's intent to subject the suit to federal jurisdiction under CAFA. Conversely, the more the action involves purely local interests, the more this factor favors state-court jurisdiction.

The statute does not define "matters of national or interstate interest." But this case is not a close one. Everything connects to Oklahoma. As the district court said in weighing this factor in favor of remand, "[A]ll of the subject oil and gas wells are located in Oklahoma, all class members own interests in the subject Oklahoma wells, Plaintiff is an Oklahoma citizen (along with 48.46% of the class), JMA is an Oklahoma citizen with its principal place of business in Oklahoma, the business activities that gave rise to this case occurred in Oklahoma, and the claims are based upon Oklahoma law." Aplt. App. at 165. It further reasoned that national interests are not implicated by either (1) the fact that courts in other jurisdictions consider the rulings of Oklahoma courts in ruling on oil-and-gas issues or (2) the general interest of the oil-and-gas industry and royalty owners in Oklahoma court rulings on oil-and-gas issues. *See id.* at 165–66.

JMA argues that this suit involves matters of national and interstate interest because the allegedly incorrect payments were distributed to putative class members in nearly every State. It cites an example provided in the Senate Judiciary Committee Report in support of CAFA: "[I]f a nationally distributed pharmaceutical

9

product is alleged to have caused injurious side-effects and class actions on the

subject are filed, those cases presumably should be heard in federal court because of

the nationwide ramifications of the dispute and the probable interface with federal

drug laws. . . ." S. Rep. No. 109-14, at 36 (2005), *as reprinted in* 2005 U.S.C.C.A.N.

3, 35. But to the extent that the Senate Report provides useful legislative history,[2] its

example is easily distinguished from this case. The injuries discussed in the example

are associated with a defective pharmaceutical product placed by a manufacturer into

the stream of commerce, causing physical harm to downstream plaintiffs in many

different States who may have little or no connection with the forum State. By

contrast, the plaintiffs in this case, whatever their state citizenship, purposefully

availed themselves of Oklahoma and its laws by owning mineral-interest property in

Oklahoma, which ultimately formed the basis of their cause of action. This

represents a significantly stronger connection to the Oklahoma state forum than the

---

[2]   The Supreme Court and this court have cited Senate Report 109-14 as an aid to discerning Congressional intent underlying CAFA. *See Dart Cherokee Basin*, 135 S. Ct. at 554; *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 458 (2010); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014). But the value of the Report should perhaps not be overstated. The Report was issued ten days *after* CAFA was signed into law, and therefore had not been formally issued at the time the Senate deliberated and voted on CAFA. *See, e.g.*, *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 177 (4th Cir. 2011) ("Senate Report 109-14 . . . was issued 10 days *after* CAFA was signed into law, and for that reason alone, it is a questionable source of congressional intent."); *Coll. of Dental Surgeons v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38 n.2 (1st Cir. 2009) (noting ten-day delay and characterizing Report's "value as a means of discerning congressional intent" as "clouded"). *But see Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1206 n.50 (11th Cir. 2007) (noting Report's belated issuance, but asserting it was "submitted to the Senate on February 3, 200[5]—while that body was considering the bill," citing 151 Cong. Rec. S978-01, S978, [2005 WL 264081]).

10

connection of nationwide plaintiffs to a particular state forum in the Senate Report example. *Cf. Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613, 619 (10th Cir. 2012) (discussing degrees of defendant's connection to forum in product-liability case, for purpose of evaluating personal jurisdiction under due-process principles). In addition, the example provided in the Report cites potential federal regulation of the medical product, a factor not present in this case.

JMA also faults the district court for looking to the location of the oil and gas wells rather than the physical location of the payees. But this ignores what the proposed class plaintiffs have in common: all of them "own interests in the subject Oklahoma wells." Aplt. App. at 165. Absent such a common interest centered on wells physically located in Oklahoma, the plaintiffs would have no cause to seek redress from JMA in this action. The geographic dispersion of the class plaintiffs should not be overemphasized as a factor favoring federal jurisdiction. After all, Congress has authorized the district court to apply the discretionary exception to disputes that are local in character, even if up to 2/3 of the plaintiffs are citizens of other States, *see* 28 U.S.C. § 1332(d)(3); and, as we discuss below, under the fifth factor of the discretionary analysis a broad dispersion of potential plaintiffs among many States actually *favors* remand, *see id.* § 1332(d)(3)(E).

Finally, JMA argues that this case could have nationwide effects because Oklahoma has a significant position in the oil-and-gas industry, and payments nationwide from other producers operating in Oklahoma as well as producers operating in other States could therefore be affected by the outcome of the case. But

11

if a State's laws are particularly influential, one would assume that it is because of the prestige and expertise of the courts and legislature of that State. We see no need to "protect" other States (who have every right and power to set different laws, and to adopt their own judicial interpretations of those laws) by shielding them from the influence of Oklahoma courts. And JMA fails to explain how there can be a significant national interest in the mere allocation of interest between producers and royalty owners. The only thing "national" or "interstate" about this case is that some of the owners of Oklahoma property who are basing their claims on alleged violations of an Oklahoma statute happen to live in other States and receive their royalty checks there.

### *Governing State Law*

The second factor is whether the claims asserted will be governed by Oklahoma law or the laws of other States. *See* § 1332(d)(3)(B). The parties do not dispute that the governing law should be determined under Oklahoma choice-of-law principles, since Oklahoma is the forum State. JMA's argument on the issue is that the fraud claims against it may, under those principles, be governed by the law of a State other than Oklahoma. The district court found the argument unpersuasive and concluded that this factor weighed slightly in favor of Mr. Speed's motion to remand.

If the district court erred, it was only in not giving the choice-of-law factor greater weight in favor of remand. To begin with, the backbone of the class claim is a claim—failure to pay interest—that undoubtedly must be decided under Oklahoma law. The petition filed by Mr. Speed relies solely on an Oklahoma statute as the

12

source of the duty to pay interest. This reliance on state law for the principal claim in itself argues for remand. *See Newberg on Class Actions* § 6:21 ("Courts have generally held that the second factor . . . can weigh in favor of remand even if other claims (including claims under federal statutes or the laws of other states) are involved in the suit.").

And the fraud claim merely piggybacks on that state-law claim, essentially alleging only that JMA failed to inform the class that it was violating the Oklahoma statute. It contains the following assertions:

> Defendant owned and/or operated (and/or Defendant owned a working interest in) numerous oil and/or gas wells throughout Oklahoma. Thus, Defendant knowingly and intentionally took on the duties associated with such interests, including the duty to pay O&G Proceeds to Owners in accordance with Oklahoma law.

> Defendant, however, took on such duties with the intent to deceive Owners and not pay the full O&G Proceeds owed. Specifically, Defendant knew it owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members. Further, Defendant intended to avoid its obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest.

> Plaintiff and the Class relied on and trusted Defendant to pay them the full O&G Proceeds to which they were entitled under Oklahoma law.

> Plaintiff and the Class have been damaged by Defendant's actions and violations of law.

> Defendant's failure to pay the interest it owes to Plaintiff and the Class is a result of Defendant's actual knowing and willful intent: (a) to deceive the members of the Class, and/or (b) to deprive such interest from persons Defendant knows, or is aware, are legally entitled thereto.

Aplt. App. at 23–24 (paragraph numbers omitted).

13

Although this litigation is in an early stage, we fail to see why the law of any State other than Oklahoma would apply to any of the putative class members' fraud claims. In resolving choice-of-law issues, Oklahoma courts have looked to the Restatement (Second) of Conflict of Laws (1971) (Restatement) for guidance. *See, e.g.*, *Weber v. Mobil Oil Corp.*, 243 P.3d 1, 6–7 (Okla. 2010); *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 626 & n.6 (Okla. 2003). The district court concluded that Oklahoma courts would apply Restatement § 148(2), governing fraud and misrepresentation claims.[3] That provision is not a particularly good fit for the

---

[3] Section 148 states:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(continued)

14

unusual fraud claim alleged in this case. Although § 148 focuses on where representations were made and where the plaintiff acted in reliance, Mr. Speed's petition does not identify any specific false or misleading statements made by JMA concerning its obligations to pay statutory interest, nor does it identify any acts taken by class members in reliance.

Nevertheless, the Oklahoma Supreme Court strongly suggested in *Weber* how it would apply § 148 to fraud claims challenging underpayment of royalties and the like on production of oil and gas from Oklahoma wells. The issue before the court was whether a class should be certified and it is unclear whether some of the discussion relates to class certification rather than choice of law, but it is clear that an important factor favoring class certification was that Oklahoma law would govern most, if not all, of the claims. *See Weber*, 243 P.3d at 7. The court did not recognize any § 148 factor as substantially favoring the law of another State, and it unambiguously identified at least two factors as favoring application of Oklahoma law. *Id.* First, it treated as important that the representations were made in Oklahoma. *See id.* Here, it seems appropriate to treat JMA's alleged silence as occurring in that State. And *Weber* applied in the royalty context a comment to § 148

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

15

recognizing the "particular importance" of the location of land that is the subject of the tort action. Restatement § 148 cmt. i. The court wrote:

> Other *Restatement Comments* also support allowing the fraud claim to go forward as a class action. The comments provide that where the subject of the transaction is a tangible thing, the place where the thing is situated at the time of the transaction is a significant contact especially where both parties are aware that the thing was situated in this place at that time. Furthermore, the situs of the thing is particularly relevant if it involves an interest in land [citing Comment *i*]. It is undeniable that the oil and gas products sought to be unitized were to be pumped from the Putnam Oswego Unit located entirely within the boundaries of Oklahoma. Upon their production, they became tangible personal property collected and sold from Oklahoma reservoirs.

*Weber*, 243 P.3d at 7 (footnotes omitted).

In any event, we need not travel too far into the weeds on this issue. Almost everything about this case is suffused with the distinct aroma of Oklahoma. The claims arise out of interests in property in Oklahoma. There is no allegation of any act performed by JMA outside that State. The alleged misconduct consists of a failure to comply with an Oklahoma statute and failure to announce that noncompliance. The sole connection to other States is that some of the owners of Oklahoma property live outside the State and receive their royalty checks there. JMA cites no case law or other authority suggesting that in this context another State's law would apply to a fraud claim of any of the class members. We see no abuse of discretion in the district court's evaluation of this factor.

### Attempts to Avoid Federal Jurisdiction

The third factor is "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction." § 1332(d)(3)(C). JMA asserts that Mr. Speed

16

attempted to avoid federal jurisdiction by excluding from the class any publicly traded companies and affiliated entities that produced, gathered, processed, or marketed oil and gas. The district court found this argument unpersuasive, reasoning that Mr. Speed had proposed a "natural class" that "encompass[ed] all of the people and claims that one would expect to include in a class action." Aplt. App. at 167 (internal quotation marks omitted).

We agree with the district court. This factor favors retention in federal court when the plaintiff has deliberately defined the prospective class or the relief sought in order to frustrate removal under CAFA. *See Preston*, 485 F.3d at 822–23 ("[T]he record does not indicate that the plaintiffs[] intentionally pleaded the case in a manner to avoid federal jurisdiction and neither defendant asserts such an allegation."); *cf. Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008) (aggregating, for purposes of CAFA's jurisdictional amount-in-controversy requirement, five complaints worded nearly identically but seeking relief for discrete time periods, each claiming damages just below CAFA's threshold amount, "where there [was] no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA"). The Senate Report on CAFA says that if the plaintiff "proposed a 'natural' class—a class that encompasses all of the people and claims that one would expect to include in a class action," or, in other words, if the "class definition and claims appear to follow a 'natural' pattern," this factor would weigh in favor of the federal court's remanding the complaint to be handled by the state court. S. Rep. No. 109-14, at 37.

17

JMA argues that the proposed class is not a "natural class" because it excludes "publicly traded oil and gas companies and their affiliates." Aplt. Opening Br. at 25 (citing Pet. ¶ 18, Aplt. App. at 18). These entities, JMA contends, are the most likely of all potential class members to be non-Oklahoma citizens. But Mr. Speed explains to us, as he did to the district court, that he "excluded publicly-traded companies because those companies are likely implementing the same improper late payment practices as JMA." Aplee. Br. at 19.

Mr. Speed also notes that the same entities have been excluded from the proffered class in many cases either filed directly in federal court under CAFA or removed without objection. JMA misses the point when it argues that these other class definitions are irrelevant when the cases were filed in federal court where the remand issues did not arise. The point is that the exclusion of publicly traded companies from the class is "natural"—not motivated by a desire to avoid federal jurisdiction—if counsel clearly have excluded these companies even when federal jurisdiction was either desired or not a concern.

JMA responds that the district court should not have relied on prior cases filed by the same counsel, because such reliance "creates the potential for a self-fulfilling analysis." Aplt. Opening Br. at 27. JMA's apparent theory is that counsel could define an "unnatural" class in cases where federal jurisdiction was acceptable just so that the class definition could be used later to defeat federal jurisdiction. The theory is speculative and unconvincing. And in any event, Mr. Speed points out that a number of the cases he has cited were filed by other counsel.

18

Finally, JMA notes that Mr. Speed failed to affirmatively allege in his Petition the prerequisites for federal-court jurisdiction under CAFA, such as an amount in controversy in excess of $5,000,000. Had Mr. Speed affirmatively alleged such facts, it might have *rebutted* a contention that he was seeking to avoid federal-court jurisdiction. But his failure to allege such facts in a state-court petition, where they would be irrelevant, is unsurprising and adds little or nothing to the analysis of this factor.

### *Forum's Nexus to Class Members, Alleged Harms, and Defendants*

The fourth factor is "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants." § 1332(d)(3)(D). The district court concluded that this factor weighed in favor of remand because the action related to real-property interests in Oklahoma, the class members owned royalty interests in Oklahoma property, JMA is a citizen of Oklahoma, and the underlying alleged actions that gave rise to this suit took place in Oklahoma. We agree that these factors demonstrated the required nexus between Oklahoma and the class members, the alleged harms, and the defendant.

JMA argues, however, that the relevant forum for assessing this factor was not the entire State of Oklahoma but Hughes County, Oklahoma, the county in which the action was originally filed. The district court rejected JMA's county-specific test as contrary to the weight of authority and "virtually unworkable," noting that under that approach a court would "almost always" be compelled to "find the factor weigh[s] in favor of federal jurisdiction." Aplt. App. at 168. It reasoned that CAFA's analysis

19

involves federalism—"the relationship between federal courts and state courts"—and that "any county court in Oklahoma is viewed as an Oklahoma state court for purposes of the forum analysis." *Id.* (internal quotation marks omitted). It concluded that under this factor the specific county in which the action was filed was irrelevant.

JMA responds with a textual argument supported by legislative history. First, § 1332(d)(3)(D) is the only provision of CAFA that uses the word *forum*, but *State* is used several times in other provisions. *See id.* §§ 1332(d)(3)(B) ("whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States"); 1332(d)(3)(E) ("whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States"). JMA argues that we must follow the plain language of § 1332(d)(3)(D), which refers to the "forum" rather than the "State," and "[i]f Congress meant for this factor to reference a State, instead of a county, Congress would have said so." Aplt. Opening Br. at 30.

JMA adds that its approach finds support in the Senate Report on CAFA, which says that the purpose of this provision is to curb "magnet" state courts—local courts that get a disproportionate share of filings because they are favorable to plaintiffs:

> This factor [nexus between the forum and the class members, alleged harms, or defendants] is intended to take account of a major concern that led to this legislation—the filing of lawsuits in out-of-the-way "magnet"

20

state courts that have no real relationship to the controversy at hand.  Thus, for example, if the majority of proposed class members and the defendant reside *in the county where the suit is brought*, the court might find a distinct nexus exists.  The key to this factor is the notion of there being a distinct nexus.  If the selected forum's nexus to the controversy is shared by many other forums (e.g., some allegedly injured parties *live in the locality*, just as allegedly injured parties live *in many other localities*), the nexus is not distinct, and this factor would in that circumstance weigh heavily in favor of the exercise of federal jurisdiction over the matter.

S. Rep. No. 109-14, at 37 (emphasis added).

Asserting that the term *forum* is unambiguous in this context, JMA contends that there has been no affirmative factual showing that the District Court of Hughes County, as opposed to the entire State of Oklahoma, has any distinct nexus with the class members, the alleged harm, or the individual defendants.

We are skeptical of JMA's argument.  The term *forum* is ambiguous. Although apparently no court has confronted the argument made by JMA, the term has been used in CAFA cases to refer to both the local court division and the State as a whole.  *Compare, e.g.*, *Preston*, 485 F.3d at 823 ("[A] distinct nexus exists between the forum of Louisiana and the class members, alleged harm, and the defendants.") *with, e.g.*, *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008) ("[T]he fourth factor points to remand as the chosen forum, the Nassau County Supreme Court, bears a distinct nexus to the claims of over one thousand former tenants of a multiple building apartment complex located within Nassau County.").

But even if the term *forum* could refer to the local court division and not just the State as a whole, we cannot adopt JMA's approach to this factor.  We do not read

21

the factor to forbid remand whenever the proposed class is widely dispersed within a State or the venue selected by the plaintiff contains only a small fraction of the class. When there is, as here, an ample connection to the forum State, only a clear abuse of the local forum could possibly justify a refusal to remand. After all, the choice before the district court is between federal jurisdiction and state jurisdiction. The court cannot require that the State choose a particular venue within its boundaries. Once the case is remanded to state court, the venue could be moved. A federal court should be reluctant to exercise its power to retain jurisdiction simply because it views the State's venue rules to be too lenient in that they permitted the case to be filed in an "inappropriate" local court division. Principles of federalism counsel otherwise. *See West Virginia. ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) ("CAFA is . . . sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters."). Surely more must be required.

Thus, ordinarily there is a "distinct nexus" to the forum if there is a distinct nexus to the State and there is no particular reason to distinguish the local court where the case was originally filed from other local courts in the State. Perhaps the general rule does not apply when, as suggested by the Senate Report, the local court is a magnet court. But JMA has not even suggested, much less provided evidence, that the Hughes County Court is in any way such a court. In that light, we cannot say that the district court abused its discretion in weighing this factor in favor of remand.

22

### Citizenship of Proposed Class Members

The fifth factor is "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States." 28 U.S.C. § 1332(d)(3)(E). The district court found that this factor weighed in favor of remand. It noted that the number of Oklahoma citizens was about 2.5 times the number of citizens from any other State. The district court relied on a chart produced in Mr. Speed's amended motion to remand, based on jurisdictional discovery from JMA, which calculated the percentage of class members residing in each State as follows:[4]

Oklahoma 48.46%

Texas 20.95%

California 5.68%

Colorado 4.05%

Kansas 2.61%

Arkansas 1.97%

---

[4] The motion states that these percentages are based on the "residency of class members by state." Aplt. App. at 55. Citizenship, not residency, is the relevant criterion for this factor. *Cf. Hargett v. RevClaims, LLC*, 854 F.3d 962, 965–67 (8th Cir. 2017) (distinguishing between "residency" and "citizenship" for purposes of CAFA's local-controversy exception). But JMA does not raise an issue concerning this distinction and so we find it unnecessary to consider it.

Florida 1.54%

New Mexico 1.25%

Arizona 1.20%

Missouri 1.11%

All Others 11.18%[5]

Aplt. App. at 55.

JMA argues that the district court erred because (1) more out-of-state citizens have a potential connection to this action than Oklahoma citizens; and (2) one or more of the other States involved account for more than 5% of the prospective class members. It points to the Senate Report on CAFA, which states:

> If all of the other class members (that is, the class members who do not reside in the state where the action was filed) are widely dispersed among many other states (e.g., no other state accounted for more than five percent of the class members), that point would suggest that the interests of the forum state in litigating the controversy are preeminent (versus the interests of any other state). . . . [S]uch a conclusion would favor allowing the state court in which the action was originally filed to handle the litigation. However, if a court finds that the citizenship of the other class members is not widely dispersed, the opposite balance would be indicated. A federal forum would be favored in such a case because several states other than the forum state would have a strong interest in the controversy.

S. Rep. No. 109-14, at 37–38.

But the district court made precisely the calculations required by the unambiguous statutory language for the fifth factor. The 5% figure in the Senate Report is solely an *example* of when plaintiffs are widely dispersed among different

---

5    The motion noted that "[a]ll other states include class members with less than 1% of the total for each state." Aplt. App. at 55 n.1.

24

States, not a mandatory threshold for evaluating dispersion. And the court's analysis captures the purpose of this factor—to ensure that no other State has as significant an interest in the controversy as does Oklahoma. *See Newberg on Class Actions* § 6:21 ("The [fifth] factor embeds an assumption that if most of the class is from the forum state—particularly if a disproportionate piece of a nationwide class is located there—then there are stronger grounds for application of the exception. As a result, courts . . . [look] in particular at whether any other state has an interest in the litigation on par with the forum state."). The court correctly determined that this factor weighed in favor of remand.

### *Similar Class Actions*

Finally, the district court must consider "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3)(F). The Senate Report explains that "[t]he purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions." S. Rep. No. 109-14, at 38. If other class actions involving the same subject matter had been filed elsewhere, this would strongly favor federal jurisdiction, because the combined litigation could be handled under the federal court's multidistrict-litigation process. *See id.* (citing 28 U.S.C. § 1407).

25

The district court noted that no other such actions had been filed during the previous three-year period.  JMA does not argue otherwise.  This factor favors remand.

### IV.

The district court did not abuse its discretion in ruling that each factor supported remand.  We therefore affirm its decision remanding this case to state court.  JMA's motion for a ten-day extension of the statutory decision period is granted.[6]

---

[6]    Under 28 U.S.C. § 1453(c)(2), this court must render judgment within 60 days of the filing of the appeal.  But the court may extend that deadline for up to ten days "for good cause shown and in the interest of justice."  *Id.* § 1453(c)(3)(B).  Finding this standard satisfied, we grant the ten-day extension.